NEW YORK CENT. & H. R. R. CO. v. MAINE S. S. CO.

(District Court, S. D. New York.   October 3, 1907.)

SHIPPING—INJURY OF VESSEL BY SWELL — IDENTIFICATION OF OFFENDING STEAMER.

> Evidence *held* insufficient to establish the claim that a steamer which, in passing through a narrow channel in East river at a high rate of speed, created a swell by which libelant's lighter lying at a wharf was injured, was one owned by respondent; it being shown affirmatively that none of its vessels was in the vicinity at the time of the injury.

> [Ed. Note.—Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

In Admiralty.

Butler, Notman & Mynderse and Anthony M. Menkel, for libellant.
James J. Macklin and La Roy S. Gove, for respondent.

ADAMS, District Judge.   The New York Central & Hudson River Railroad Company, the owner of the hoisting lighter or barge Sampson, brought this action against the Maine Steamship Company to recover the damages caused to the lighter by swells from one of the latter's steamers while the lighter was lying at the railroad company's wharf at Port Morris on the East River on the 28th day of July, 1903, taking marble on board.   The defence is that the steamer of the respondent which passed the place in question on that day was the North Star and she was proceeding at a low rate of speed; that she did not produce any unusual swell when she passed and "was nowhere near the point where said lighter was lying at the time mentioned in said libel."

The testimony shows that a large steamer, similar to the respondent's, did pass the place at a high rate of speed between 2 and 3 o'clock in the afternoon of said day and cause some damage by her swells.   The channel at the place is about a quarter of a statute mile wide and the testimony shows that it is necessary for large steamers to proceed at a moderate speed in order to avoid creating swells which would be dangerous to vessels lying at the said dock.   The steamer that passed was rather on the Port Morris side of the channel, and did create swells which injured libellant's lighter quite seriously and the question in the case, was it one of the respondent's.

The master of the lighter testified that the accident happened about 2:40 o'clock P. M. and he only saw the steamer when she was abreast in passing, but did not see her name; that she was going very fast, 10 or 12 miles an hour, and soon was out of his sight by reason of becoming obscured from him by the marble on his boat.   He identified her by a black hull, white bulwarks and black painted funnel.   Another witness, presumably disinterested, saw the accident from the dock near by; he did not see the name of the steamer but said he knew the steamers of the Portland Line and this was one of them; that the accident happened between 2 and 3 o'clock; he also identified her by the same painting.   He evidently did not see her for any length of time as when he first observed her she was coming around North Brother Island.   Another witness testified to the same effect.

In the absence of contradictory testimony, what the libellant's witnesses have testified to might suffice to establish a case against the respondent, but its testimony shows that at the time it only had two steamers in operation, the North Star and the Horatio Hall, and that neither of them was in the vicinity of Port Morris at the time. The North Star was lying at her pier, No. 32, East River, Manhattan, until several minutes after 5 o'clock, when she proceeded about 7 or 8 miles an hour in the centre of the channel and passed Port Morris bound for Portland about 6 o'clock. She met the Hall near Vineyard Haven proceeding to New York. It seems to be clearly established that neither of these vessels was near the place of accident at the time it happened. This conclusion has been reached without recourse to the logs, which were marked tentatively in evidence when the testimony was taken de bene esse.

Libel dismissed.